## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

MAROUANE RAMANOU

    Plaintiff,

v.

TRISTEN KAUTMAN
(in his individual capacity)
Prairie du Chien Police Department
228 N. Beaumont Road
Prairie du Chien, WI 53821,

JOSH HEMMER
(in his individual capacity)
Prairie du Chien Police Department
228 N. Beaumont Road
Prairie du Chien, WI 53821,

CITY OF PRAIRIE DU CHIEN
214 E. Blackhawk Ave.
Prairie du Chien, WI 53821,

KYLE MEZERA
(in his individual capacity)
Crawford County Sheriff's Office
224 N. Beaumont Rd.
Prairie du Chien, WI 53821,

CRAWFORD COUNTY
224 N. Beaumont Rd.
Prairie du Chien, WI 53821,

ABC INSURANCE COMPANY,

DEF INSURANCE COMPANY,

    Defendants.

Case No.: 3:25-839

**COMPLAINT**
[Trial by Jury Demanded]

**NOW COMES** the above-named plaintiff, Marouane Ramanou, by his attorneys, Gingras, Thomsen, and Wachs LLP, and as and for his claims for relief, alleges and shows to the Court as follows:

### INTRODUCTION

1. This action is brought to redress Prairie du Chien Police Department Officer Tristen Kautman's, Officer Josh Hemmer's and Crawford County Deputy Kyle Mezera's unlawful search and seizure, in violation of 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution.

2. Approximately thirty minutes after a Crawford County Sheriff's deputy stopped Mr. Ramanou and gave him a ticket for allegedly speeding, Officer Tristen Kautman of the Prairie du Chien police department again stopped Mr. Ramanou for allegedly speeding.

3. Despite Officer Kautman stating he was going to let Mr. Ramanou go with a warning, Officer Kautman initiated a dog sniff of Mr. Ramanou's vehicle without any reasonable suspicion of unlawful activity. Officer Kautman, Officer Josh Hemmer and Deputy Kyle Mezera conducted a search of the vehicle, which lasted approximately fifteen additional minutes. The stop lasted approximately 23 minutes, and the search did not produce any illegal substances or contraband. Instead, the prolonged search was nothing more than a fishing expedition, including a ten-minute inquiry into whether a car battery located in the trunk of the vehicle was "evidence" of unlawful activity. This "extended" stop and seizure was contrary to the law. *See, e.g., Taylor v. Schwarzhuber*, 132 F.4th 480, 493 (7th Cir. 2025) ("Even one second of continued detention after an unlawful stop is too long.").

4. Officer Kautman, Officer Hemmer, and Deputy Mezera's conduct was purposeful and flagrant. They conducted a suspicion-less race-based fishing expedition in the hope that something would justify the unlawful search and seizure.

## PARTIES

5. Plaintiff Marouane Ramanou ("Mr. Ramanou") is a black man and an adult resident of the State of Wisconsin, residing at 665 N. Westfield St., Apt. A6, Oshkosh, WI 54902. At all times material hereto, Mr. Ramanou was entitled to all rights and privileges granted by the United States Constitution.

6. Defendant Officer Tristen Kautman, ("Officer Kautman") is a white male and an adult resident of the State of Wisconsin. Officer Kautman was a police officer with the Prairie du Chien Police Department at all times relevant to this action and was acting under the color of law and within the scope of his employment with the Prairie du Chien Police Department at all times relevant hereto.

7. Defendant Officer Josh Hemmer ("Officer Hemmer") is a white male and an adult resident of the State of Wisconsin. Officer Hemmer was a police officer with the Prairie du Chien Police Department at all times relevant to this action and was acting under the color of law and within the scope of his employment with the Prairie du Chien Police Department at all times relevant hereto.

8. Defendant City of Prairie du Chien ("Prairie du Chien"), with offices of its executive at 214 E. Blackhawk Ave., Prairie du Chien, WI 53821, is and was at all times material hereto, a Municipal Corporation organized under the laws of the State of Wisconsin. Prairie du Chien established, operated, and maintained the Prairie du Chien Police Department at all times material hereto. Prairie du Chien is ultimately responsible for the training, supervising, and

discipline of Prairie du Chien Police Department employees and the creation and implementation of its policies and procedures through its Chief of Police and had ultimate control and authority over the Prairie du Chien Police Department and Officer Kautman and Officer Hemmer. Pursuant to Wis. Stat. § 895.46, Prairie du Chien is required to pay or indemnify all judgments, including compensatory and punitive damages, attorney's fees and costs that may be awarded against its officials, employees and agents.

9. Defendant Deputy Kyle Mezera ("Deputy Mezera") is a white male adult resident of the State of Wisconsin. At all times relevant to this action, Deputy Mezera was employed as a deputy sheriff by the Crawford County Sheriff's Office and was acting under the color of law and within the scope of his employment with the Crawford County Sheriff's Office and/or Crawford County at all times relevant hereto.

10. Defendant Crawford County is a municipal government located within the State of Wisconsin with a principal place of business in the city of Prairie du Chien, with its primary address as 224 N. Beaumont Rd., Prairie du Chien, WI 53821. Crawford County is the employer of Deputy Mezera who was acting in the scope of their employment at the time of the incident. Pursuant to Wis. Stat. § 895.46(1)(a), Crawford County is required to pay or indemnify all judgments, including compensatory and punitive damages, attorney's fees and costs that may be awarded against its officials, employees and agents.

11. ABC Insurance Company is the fictitious name for an unknown insurance company that was engaged in writing and selling a policy of liability insurance covering the conduct of Officer Kautman, Officer Hemmer, and Prairie du Chien.

12. DEF Insurance Company is the fictitious name for an unknown insurance company that was engaged in writing and selling a policy of liability insurance covering the conduct of Deputy Mezera and Crawford County.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over Plaintiff's claims and the Parties pursuant to 28 U.S.C. § 1331 (federal question) and § 1343 (civil rights).

14. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2).

## FACTS

15. On March 15, 2023, shortly before 10:00 p.m., a Crawford County Sheriff's deputy pulled Mr. Ramanou over for allegedly speeding. The traffic stop lasted a few minutes, and the deputy issued Mr. Ramanou a speeding ticket.

16. Less than thirty minutes later, Mr. Ramanou entered the City of Prairie du Chien in Crawford County, where the speed limit dropped from 55 miles per hour to 45 miles per hour. Mr. Ramanou drove past a Prairie du Chien squad car parked near the Kwik Trip located at 37947 Selch Rd., Prairie du Chien, WI, occupied by Officer Kautman, traveling what he believed to be approximately 45 miles per hour.

17. Officer Kautman followed Mr. Ramanou on Highway 18 for approximately one mile and then activated his lights to perform a traffic stop at 37502 US Highway 18. Mr. Ramanou promptly pulled his vehicle to the side of the road.

18. At 10:14:45 p.m., Officer Kautman walked up to Mr. Ramanou's vehicle and told him that he was speeding. He told Mr. Ramanou "It's not too big of a deal man."

19. Officer Kautman asked Mr. Ramanou for his license, registration and insurance. He again informed Mr. Ramanou "It's not that big of a deal man. You're good."

5

20. After Mr. Ramanou handed Officer Kautman his driver's license, Officer Kautman asked him whose vehicle he was driving. Mr. Ramanou explained that it was a work vehicle.

21. Mr. Ramanou told Officer Kautman that he was very sorry and asked if he should get out of the vehicle.

22. Officer Kautman assured Mr. Ramanou this would be a quick and harmless traffic stop, responding, "No. I'm not going to give you a ticket. Don't worry about it. I'm going to make sure everything is good here, make sure your vehicle has insurance, and I'll just give you a warning. Ok?"

23. While Mr. Ramanou searched for his registration and insurance information, as requested by Officer Kautman, Mr. Ramanou lightheartedly expressed "I promise you, I'm very harmless." In the meantime, he placed his wallet on the dashboard and continued looking through his backpack to find the paperwork.

24. Officer Kautman inquired what Mr. Ramanou does for work that they give him a vehicle, and he replied, "I work with computers." Officer Kautman did not ask any follow-up questions regarding Mr. Ramanou's employment.

25. To help find requested paperwork, Mr. Ramanou asked Officer Kautman to flash his flashlight in his vehicle. Mr. Ramanou tells Officer Kautman "I'm not trying to do anything." Officer Kautman responded, "[y]ou're good."

26. Mr. Ramanou found the rental car information and handed it to Officer Kautman at 10:16:32 p.m.

27. Mr. Ramanou showed Officer Kautman his outstretched hands and asked him if he could get out of the car to stretch.



28. Officer Kautman told Mr. Ramanou he did not need to show him his hands and to "relax." Officer Kautman allowed Mr. Ramanou to step out of his vehicle.

29. At 10:17:05, Mr. Ramanou exited his vehicle. Around this time, Deputy Mezera arrived at the scene.

30. Mr. Ramanou walked to the rear of his vehicle with his hands outstretched – showing to the officers that he was willing to comply with any orders they might give him.





31.     Ramanou asked Officer Kautman "[a]m I getting a ticket again, sir?" and after Officer Kautman asked him if he already received a ticket, Mr. Ramanou replied "[t]o be honest, yes I did."

32.     Officer Kautman told Ramanou that he did not plan on giving Mr. Ramanou a ticket. Instead, he was "just going to make sure everything was good on [the license and rental information] and then give [Mr. Ramanou] a warning."

33.     Mr. Ramanou explained to the officers that he was in Prairie du Chien visiting his fiancée.

34.     At 10:18:34, Officer Kautman asked Deputy Mezera to check Mr. Ramanou's license and rental information.

35.     Officer Kautman again asked Mr. Ramanou why he was renting a car. Mr. Ramanou explained that he travels for work, so they give him a rental car.

36.     At 10:19:16, Officer Kautman asked Mr. Ramanou to step away from the rental vehicle, and at 10:19:24, Officer Kautman explained that he was now going to run a dog sniff of Mr. Ramanou's vehicle.

37.     At 10:19:45, as Officer Kautman prepared to have his dog conduct the sniff, he told Mr. Ramanou that Deputy Mezera was still only going to write him a warning.

38.     On multiple occasions during the sniff, the dog put its front paws on the rental car, scratching the vehicle and causing damage. Mr. Ramanou remained by the squad vehicle during the sniff but tried to alert Officer Kautman to the damage the dog was causing to the vehicle:

9





39.     The damage to the vehicle can be seen below:

10



40. At 10:21:26, Officer Kautman ended the sniff and then gave a thumbs up to the other officer, indicating there were drugs in Mr. Ramanou's rental vehicle.



41.     At 10:22:28, Officer Kautman told Mr. Ramanou that they had probable cause to search the vehicle. Mr. Ramanou explained that he does not do drugs and does not possess any drugs.

42.     At 10:24:11, Officer Kautman began the search of Mr. Ramanou's rental vehicle, searching through the front and rear sections of the vehicle, as well as Mr. Ramanou's wallet and backpack.

43.     At 10:26:28, Officer Kautman began searching the trunk of the rental vehicle. Officer Kautman did not locate anything in the main portion of the trunk and began searching the tire well at 10:26:34.



44.     Officer Kautman asked Officer Josh Hemmer whether there was supposed to be a spare tire in the tire well; why the battery was located in the trunk of the vehicle; and why there

12

was a cardboard box sitting next to the battery. Mr. Ramanou had already provided the officers with information demonstrating that this was a rental car – he did not own the vehicle.

45. Officer Kautman explained to Officer Hemmer that Mr. Ramanou's wallet had a lot of cash.

46. At approximately 10:27:41, Officer Hemmer opened the passenger door of the vehicle Mr. Ramanou was driving and conducted a search.

47. At 10:28:30, Officer Kautman radioed Deputy Mezera to the trunk of the vehicle and asked him if there was supposed to be a spare tire not an extra battery in the trunk. Deputy Mezera responded that he had "no clue." The two officers again questioned the cardboard box sitting next to the battery despite knowing that this was a rental vehicle.

48. Officer Kautman admitted that he never rented a vehicle, so he did not know if rental vehicles contained spare tires. Deputy Mezera said, "I don't either."

49. Once again, Officer Kautman expressed to Deputy Mezera that Mr. Ramanou had a lot of cash in his wallet. He also explained that Mr. Ramanou's backpack was full of water bottles and did not have clothes.

50. At 10:29:48, the officers again questioned the cardboard box, despite that Officer Kautman read out loud that the box stated "pad brake and accelerator pedal."

51. At 10:30:18, Officer Kautman told Deputy Mezera that he was going to call "one of his buddies"; he did not want to "let go"; and asked Deputy Mezera if he thinks he is "overreacting." Deputy Mezera responded, "I don't blame you."

52. At 10:30:51, Officer Kautman pulled out his cell phone to call his "buddy," who did not answer the phone.

53. At 10:31:18, while attempting to call his "buddy," Officer Kautman searched under the hood of the vehicle. At 10:32:24, Officer Kautman again questioned why the battery was in the rear of the vehicle.

54. At 10:32:46, Officer Kautman entered his squad car, and at 10:33:20, navigated to Google to conduct a search inquiry about the location of Dodge Charger (the make and model of Mr. Ramanou's rental vehicle) batteries.



55. During this time, Officer Hemmer searched the tire well which Officer Kautman had already searched.

56. At 10:34:14, Officer Kautman began watching a YouTube video entitled "Dodge Charger Hidden Battery Location." This video confirmed that the battery in this type of vehicle was located in the spare tire well.

57. Despite this confirmation, at 10:36:27, Officer Kautman conducted another Google search for "2015 dodge charger trunk battery" and clicked on the "People also ask" tab inquiry entitled "Why is the battery in the trunk of a Dodge Charger?"

58. At 10:36:41, Officer Kautman exited his squad car and at 10:36:48 Officer Hemmer told Officer Kautman "I got nothing." They agreed there was "nothing" in Mr. Ramanou's vehicle. Officer Kautman stated "I don't know man. It is what it is."

59. At 10:37:16, approximately 23 minutes after the stop was initiated, Deputy Mezera provided Mr. Ramanou with his license and rental information. Officer Kautman stated, "sorry for the inconvenience, but you are free to go."

**FIRST CLAIM FOR RELIEF – UNREASONABLE SEARCH AND SEIZURE**

60. Plaintiff realleges and incorporates by reference all other paragraphs in this complaint.

61. At all times relevant to the events set forth, Mr. Ramanou had a clearly established constitutional right under the Fourth Amendment to be secure in his person against unreasonable searches and seizures.

62. Any reasonable law enforcement officer knew or should have known of this clearly established right.

63. While dog sniff inspections are not per se unconstitutional, a seizure justified only by a police-observed traffic violation "becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation." *Rodriguez v. United States*, 575 U.S. 348, 350-51 (2015).

64. Defendants detained, interrogated, conducted a dog sniff, and searched Mr. Ramanou's vehicle absent any reasonable suspicion of unlawful wrongdoing other than allegedly speeding.

65. At the time Defendants unlawfully seized Mr. Ramanou to conduct a sniff inspection and search his vehicle, they knew they lacked any reasonable suspicion that Mr. Ramanou had committed any unlawful activity other than allegedly speeding.

66. Any reasonable officer knew or should have known that it is clearly established law that officers violate a person's Fourth Amendment protections from unreasonable searches and seizures when they detain a person to conduct a dog sniff and/or search his vehicle without evidence that the person is engaged in unlawful activity, and that officers deepen the breach when they prolong the unlawful detention to fish for evidence of wrongdoing.

67. Defendant's conduct was purposeful and flagrant.

68. Defendants' unlawful conduct caused Mr. Ramanou to sustain damages, including, among others, property damage, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

**SECOND CLAIM FOR RELIEF – FAILURE TO INTERVENE**

69. Plaintiff realleges and incorporates by reference all other paragraphs in this complaint.

70. At all relevant times herein, the above-named Defendants were "persons" for purposes of 42 U.S.C. § 1983 and acted under the color of state law and within the scope of their employment to deprive Mr. Ramanou of his constitutional rights.

71. Before the unlawful search and seizure, Defendants Hemmer and Mezera had sufficient time and opportunity to intervene and prevent the unlawful search and seizure but instead joined in all the unlawful conduct in reckless disregard of the Plaintiff's constitutional rights.

72. The described conduct on the part of the Defendants as set forth above was a cause of the Plaintiff's injuries, losses, and damages as set forth herein.

73. The Defendants, City of Prairie du Chien and Crawford County, are liable pursuant to Wis. Stat. § 895.46 for payment of any judgment entered against an individual employee Defendant in this action because said Defendants were acting within the scope of their employment when they committed the acts described above.

## REMEDY – PUNITIVE DAMAGES

74. Plaintiff realleges and incorporates by reference all preceding paragraphs.

75. The conduct described in this complaint of the individual Defendants was unlawful, extreme, malicious, outrageous, and/or intentional.

76. Such conduct was intended to cause Mr. Ramanou unnecessary and severe personal psychological and emotional injuries.

77. Such conduct on the part of the individual Defendants was a cause of the psychological and emotional injuries suffered by Mr. Ramanou.

78. At all times material hereto, the individual Defendants acted maliciously and/or with reckless disregard and/or with deliberate indifference toward Mr. Ramanou, or in an intentional disregard of his rights, such as to subject each individual Defendant to punitive damages.

79. The Defendants, City of Prairie du Chien and Crawford County, are liable pursuant to Wis. Stat. § 895.46 for payment of any judgment entered against an individual employee

Defendant in this action because said Defendants were acting within the scope of their employment when they committed the acts described above.

WHEREFORE, the Plaintiff demands judgment against the Defendants, jointly and severally, as follows:

a. Against Defendants Officer Kautman, Officer Hemmer, and Deputy Mezera in their individual capacities, for compensatory damages, for the violation of Mr. Ramanou's rights, as set forth above, in an amount to be determined at trial;

b. Against Defendants Officer Kautman, Officer Hemmer, and Deputy Mezera for punitive damages for the violation of Mr. Ramanou's rights, as set forth above, in an amount to be determined at trial;

c. Against Defendants City of Prairie du Chien and Crawford County for their liability pursuant to Wis. Stat. § 895.46 to indemnify the individual Defendants in an amount to be determined at a trial of this matter;

d. For all costs, disbursements and actual attorney's fees pursuant to 42 U.S.C. § 1988, and for such other relief as the Court deems just and equitable.

**PLAINTIFF HEREBY DEMANDS A JURY TRIAL OF THIS MATTER ON ALL ISSUES SO TRIABLE.**

Dated at Madison, Wisconsin, this 10th day of October, 2025

          **GINGRAS, THOMSEN & WACHS, LLP**
          Attorneys for Plaintiff

          <u>Electronically signed by Attorney Isaac P. Huettl</u>
          Isaac P. Huettl
          State Bar No.: 1122828
          Mark L. Thomsen
          State Bar No.: 1018839

**P.O. ADDRESS**
8150 Excelsior Drive
Madison, WI 53717
Telephone:	(608) 833-2632
Facsimile:	(608) 833-2874
Email:	ihuettl@gtwlawyers.com
	mthomsen@gtwlawyers.com